THE AMERICAN SCHACK COMPANY, INC., PLAINTIFF *v.* UNITED
STATES, DEFENDANT

Court No. 77-3-00366

(Decided November 3, 1980)

*Dickie, McCamey & Chilcote* (*J. Lawrence McBride* at the trial and on the brief) for the plaintiff.

*Alice Daniel*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, Field Office for Customs Litigation (*Sidney H. Kuflik* at the trial; *Robert H. White* on the brief), for the defendant.

FORD, Judge: By this action plaintiff seeks a reclassification of three entries liquidated at the Port of Chicago at 9.5 percent ad valorem under the provisions of item 657.20, TSUS. Plaintiff contends the merchandise, parts of a hood system specifically designed for a basic oxygen furnace at the Inland Harbor Works plant of the Inland Steel Co., is properly subject to classification under item 661.70, TSUS, and as such dutiable at 6 percent ad valorem.

Defendant by its answer to the complaint alternatively claims the merchandise to be properly dutiable at 9.5 percent ad valorem under the provisions of item 661.30, TSUS.

The pertinent statutory provisions and headnotes read as follows:

Tariff Schedules of the United States, 19 U.S.C. § 1202:

SCHEDULE 6.—METALS AND METAL PRODUCTS

\*    \*    \*    \*    \*    \*    \*

PART 3.—METAL PRODUCTS

\*    \*    \*    \*    \*    \*    \*

Subpart G.—Metal Products Not Specially Provided For

*Subpart G headnotes:*
1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

\*    \*    \*    \*    \*    \*    \*

Articles of iron or steel, not coated or plated with precious metal:

\*    \*    \*    \*    \*    \*    \*

Other articles:

\*    \*    \*    \*    \*    \*    \*

657.20          Other_____ 9.5% ad val.

\*    \*    \*    \*    \*    \*    \*

PART 4.—MACHINERY AND MECHANICAL EQUIPMENT

\*    \*    \*    \*    \*    \*    \*

Subpart A.—Boilers, Non-Electric Motors and Engines, and Other General-Purpose Machinery

*Subpart A headnote:*
1. A machine or appliance which is described in this subpart and also is described elsewhere in this part is classifiable in this subpart.

\*    \*    \*    \*    \*    \*    \*

661.30  Industrial and laboratory furnaces and ovens, nonelectric, and parts thereof___ 9.5% ad val.

*     *     *     *     *     *     *

Industrial machinery, plant, and similar laboratory equipment, whether or not electrically heated, for the treatment of materials by a process involving a change of temperature, such as heating, cooking, roasting, distilling, rectifying, sterilizing, pasteurizing, steaming, drying, evaporating, vaporizing, condensing, or cooling; instantaneous or storage water heaters, nonelectrical; all the foregoing (except agricultural implements, sugar machinery, shoe machinery, and machinery or equipment for the heat-treatment of textile yarns, fabrics, or made-up textile articles) and parts thereof:

*     *     *     *     *     *     *

661.70  Other_____ 6% ad val.

General headnotes and rules of interpretation:

10. *General interpretative rules.*—For the purposes of these schedules—

*     *     *     *     *     *     *

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; but, in applying this rule of interpretation, the following considerations shall govern:

(i) a superior heading cannot be enlarged by inferior headings indented under it but can be limited thereby;

(ii) comparisons are to be made only between provisions of coordinate or equal status, i.e., between the primary or main superior headings of the schedules or between coordinate inferior headings which are subordinate to the same superior heading;

*     *     *     *     *     *     *

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

The record consists of the testimony of four witnesses called on behalf of plaintiff and two by defendant. In addition, eight exhibits were received in evidence for plaintiff and three on behalf of defendant.

While the commercial invoices refer to "two complete hood systems and spares," the testimony establishes the three entries before the court cover only a portion of the hood systems. A fourth entry, not before the

court, covers the balance of the imported merchandise but not the complete system. Additional components of the complete system were manufactured in the United States.

Plaintiff's witnesses, Dixon and Feinstein, agreed that importations covered by the three entries before this court do not constitute complete hood systems. The hood system is mounted above, but some distance from, the furnace mouth so as to permit it to conduct the gases away from the furnace to a venturi scrubber which subsequently cleans the gases. This unit is operated on the basis of suppressed combustion, that is, preventing combustion to the best of its ability. This is accomplished by raising or lowering the skirt. The raising and lowering of the skirt is actuated by the furnace operator who activates hydraulic cylinders. The raising and lowering of the skirt has a dual purpose. It permits the proper amount of air into the gap which is formed between the skirt and furnace in order to best utilize the suppressed combustion system. Additionally, the skirt is moved by use of the hydraulic cylinders during the melting operation to either fill or empty the furnace.

The gases pass through the hood to the quenching system where they are cooled from approximately 2600 degrees Fahrenheit to approximately 1800 degrees Fahrenheit. This cooling is the result of the gases passing through the membrane hood which consists of circulating ducts of tubes through which water is pumped. The water then flows to a cooling tower and is recirculated to the hood. Cooling is necessary to protect the integrity of the hood, which under extreme heat could corrode or be otherwise incapacitated. The gas then proceeds vertically upward to equipment known as the venturi, which is used to take the dust out of the gas. The gases which have been freed of the dust are then passed into a large fan and flared off.

The lower portion of the hood system is designed to be movable on tracks similar to railroad tracks to permit the relining of a furnace. This track or trolley is operated by an electric motor and is manufactured in the United States.

The witnesses agree there is no primary function of the hood system. Mr. Mihm, a former employee of plaintiff called on behalf of defendant, considered the three basic functions of the hood to be conveying of gas, maintaining pressure, and extracting heat. Mr. Meder, called as a rebuttal witness for plaintiff, agreed there was no main function of the hood system and considered conveying, cooling, and pressure control to be the three basic functions of the hood.

An exhaust system of some form is required by law to prevent pollution as well as to protect workers operating near the furnace. None of the witnesses were aware of any basic oxygen furnace, presently in use in the United States, which did not have some form of exhaust

system. The witnesses did not, however, agree on the question as to whether such system is a part of the furnace. It is noted that defendant's witness Nagati considered such a system, together with the gas cleaning system, to be an integral part of the basic oxygen furnace without which it cannot safely or legally operate.

Whether the system is a part for tariff purposes is a question to be determined by the court. It is uncontroverted that the importations consist of parts of a hood exhaust system. In the field of customs jurisprudence it is a well-recognized principle that a part of a part is a part for tariff purposes. *United States* v. *American Express Co.*, 29 CCPA 87, C.A.D. 175 (1941). Therefore, if the imported parts of the exhaust hood system are parts of the basic oxygen furnace, they are for tariff purposes parts of the furnace.

Rule 10(ij) of the general interpretative rules provides that a product solely or chiefly used as a part is covered by a provision for "parts" but does not prevail over a specific provision for such part. Inasmuch as the imported system is designed for use with a specific furnace, there can be no question as to its sole use. The court is of the opinion that the hood exhaust system is part of the furnace. All witnesses agree they know of no basic oxygen furnace presently in operation which does not have an exhaust system. An exhaust system, according to the witnesses, is, to the best of their knowledge, required by law to prevent pollution and to protect the workers operating the furnaces. Such use would bring the imported merchandise under the so-called rule of essentiality. Succinctly stated, this rule provides that an integral, constituent, or component part, without which the article to which it is joined cannot function as such, is a part for tariff purposes. *United States* v. *Willoughby Camera Stores, Inc.*, 21 CCPA 322, T.D. 46851, *cert. denied*, 292 U.S. 640 (1933); *United States* v. *The J. D. Richardson Company*, 36 CCPA 15, C.A.D. 390 (1948), *cert. denied*, 336 U.S. 936 (1949); *United States* v. *John A. Steer Co.*, 46 CCPA 132, C.A.D. 715 (1959). When the law of most states requires such equipment for safe and efficient operation, as in the case at bar, it is considered an essential part. *Eric Wedemeyer* v. *United States*, 7 Cust. Ct. 141, C.D. 556 (1941). Even if the use of the imported merchandise were optional, it is a part for tariff purposes, since it contributes to the safe and efficient operation of the furnace. *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, C.A.D. 849 (1964).

In view of rule 10(ij) the court must consider whether the imported merchandise is specifically provided for. However, even if the court were to hold the imported merchandise to fall within item 661.70, supra, as claimed, and the court does not so hold, such claim would be of no avail to plaintiff since the law has been settled that item 661.30, supra, is more specific and prevails over classification under

item 661.70. *F. L. Smidth & Company* v. *United States*, 56 CCPA 77, C.A.D. 958, 409 F.2d 1369 (1969); *C. J. Tower & Sons of Buffalo, Inc., et al.* v. *United States*, 69 Cust. Ct. 105, C.D. 4379, 351 F. Supp. 604 (1972), *aff'd*, 61 CCPA 74, C.A.D. 1124, 496 F.2d 1219 (1974).

Further, the record does not satisfactorily establish the primary purpose of the said unit to be the result of a change of temperature, nor does the unit operate on materials as that term is utilized in item 661.70. The legislative history indicates only such type of article is intended to be covered by said provision. *See Tariff Classification Study*, schedule 6, page 263.

In view of the foregoing, it is apparent that a basket provision such as item 657.20, supra, the provision under which the merchandise was classified, cannot prevail over a provision for parts. *Beacon Cycle & Supply Co., Inc.* v. *United States*, 81 Cust. Ct. 46, C.D. 4764, 548 F. Supp. 813 (1978). Based upon the record and for the reasons set forth, plaintiff's claim is overruled and judgment will be entered accordingly.